KENDALL BRILL & KELLY LLP
Jeff Chemerinsky (270756)
*jchemerinsky@kbkfirm.com*
Nary Kim (293639)
*nkim@kbkfirm.com*
10100 Santa Monica Blvd., Suite 2500
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile: 310.556.2705

Attorneys for Defendant StockX LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

LAWRENCE SCHALLERT, individually and on behalf of all others similarly situated,

Plaintiff,

v.

STOCKX LLC, a Michigan limited liability company; and DOES 1 through 25, inclusive,

Defendants.

Case No. 2:26-cv-01015 JFW (KSx)

**DEFENDANT STOCKX LLC'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6) AND STRIKE CLASS ALLEGATIONS**

District Judge John F. Walter
Magistrate Judge Karen L. Stevenson

Date: April 27, 2026
Time: 1:30 p.m.
Courtroom 7A

**TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 27, 2026, at 1:30 p.m., or as soon thereafter as may be heard by the above-entitled court, located in Court 7A at the First Street U.S. Courthouse, 350 West 1st Street, Los Angeles, California 90012, Defendant StockX LLC ("Defendant") will and hereby moves, pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) for dismissal of Plaintiff Lawrence Schallert's ("Plaintiff's") Class Action Complaint.

This Motion is based on the following grounds:

(1) Plaintiff fails to allege a particularized or concrete injury-in-fact, as necessary to establish Article III standing.

(2) Plaintiff fails to state a claim under California Penal Code § 638.51, because he alleges the collection of the content of his communication with the subject website, which falls outside the statutory definition of a trap and trace device.

(3) Plaintiff fails to plead diversity jurisdiction, in the absence of any allegation concerning Defendant's principal place of business.

In the alternative, Defendant will and hereby moves to strike Plaintiff's class allegations pursuant to Rules 12(f) and 23(d).

This Motion is made following a conference between counsel, pursuant to Local Rule 7-3, which took place in person on March 18, 2026.

The Motion is based on this Notice of Motion and accompanying Memorandum of Points and Authorities, the Declaration of Jeff Chemerinsky, and the [Proposed] Order, all filed concurrently herewith, the record in this action, and any evidence and argument that may be present at or before the hearing on the Motion.

DATED: March 30, 2026 KENDALL BRILL & KELLY LLP

By: /s/ Jeff Chemerinsky
Jeff Chemerinsky
Attorneys for Defendant StockX LLC

# TABLE OF CONTENTS


**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .... 1

I. INTRODUCTION .... 1

II. BACKGROUND .... 2

III. LEGAL STANDARDS .... 3

IV. ARGUMENT .... 4

- A. The Court Should Dismiss the Complaint for Plaintiff's Failure to Plead Article III Standing. .... 4
  - 1. Plaintiff fails to allege a "particularized" injury .... 4
  - 2. Plaintiff fails to allege a "concrete" injury. .... 5
- B. The Court Should Dismiss the Complaint for Failure to State a Claim. .... 9
- C. The Court Should Dismiss the Complaint for Failure to Plead Diversity Jurisdiction. .... 12
- D. The Court Should Strike Plaintiff's Class Allegations. .... 13
- E. The Court Should Dismiss the Complaint with Prejudice. .... 14

V. CONCLUSION .... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alturas Indian Rancheria v. Newsom*,
2023 WL 3025225 (E.D. Cal. Apr. 20, 2023) .......... 11

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
465 F.3d 946 (9th Cir. 2006) .......... 14

*Blaker v. Am. Bicycle Grp., LLC*,
2024 WL 5411370 (C.D. Cal. Nov. 5, 2024) .......... 2, 13

*Brazil v. Dell Inc.*,
585 F. Supp. 2d 1158 (N.D. Cal. 2008) .......... 14

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 7

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 8

*D'Antonio v. Smith & Wesson Inc.*,
2026 WL 446310 (N.D. Cal. Feb. 17, 2026) .......... 9

*Dodd-Owens v. Kyphon, Inc.*,
2007 WL 420191 (N.D. Cal. Feb. 5, 2007) .......... 14

*Doe v. Eating Recovery Center LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 10, 12

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 7

*Farst v. AutoZone, Inc.*,
700 F. Supp. 3d 222 (M.D. Pa. 2023) .......... 8

*Gastelum v. TJX Cos., Inc.*,
2024 WL 1601256 (C.D. Cal. Mar. 28, 2024) .......... 3, 5

*Graf v. Hillstone Rest. Grp.*, Inc.,
2023 WL 3564737, at *1 (C.D. Cal. Apr. 7, 2023) .......... 13

*Heiting v. FKA Distrib. Co.*,
2025 WL 736594 (C.D. Cal. Feb. 3, 2025) .......... 5

*Hernandez-Silva v. Instructure, Inc.*,
2025 WL 2233210 (C.D. Cal. Aug. 4, 2025) .......... 5

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) .......... 7

*Ji v. Naver Corp.*,
2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) .......... 8

*John v. Superior Ct.*,
63 Cal. 4th 91 (2016) .......... 11

*Kamar v. RadioShack Corp.*,
375 F. App'x 734 (9th Cir. 2010) .......... 13, 14

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 7

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) .......... 1, 2, 10, 15

*Kramer v. Wilson Sporting Goods Co.*,
2013 WL 12133670 (C.D. Cal. Dec. 13, 2013) .......... 4

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super. Mar. 13, 2024) .......... 12

*Lugosi v. Universal Pictures*,
25 Cal. 3d 813 (1979) .......... 6

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 4

*Maxwell v. Dolezal*,
231 Cal. App. 4th 93 (2014) .......... 6

*McGee v. S-L Snacks Nat'l*,
982 F.3d 700 (9th Cir. 2020) .......... 4

*Mitchener v. CuriosityStream, Inc.*,
2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) .......... *passim*

*Mitchener v. Talkspace Network LLC*,
2025 WL 1822801 (C.D. Cal. June 27, 2025)....................5

*Moghadam v. Alleviate Tax*,
2025 WL 3190133 (C.D. Cal. Feb. 24, 2025)....................2, 13

*Moreno v. Hanford Sentinel, Inc.*,
172 Cal. App. 4th 1125 (2009)....................7

*Palacios v. Fandom, Inc.*,
2024 WL 5494527 (Cal. Super. Sep. 24, 2024)....................11

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)....................1, 4, 6, 8

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025)....................7

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023)....................8

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004)....................3

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021)....................8

*Sanchez v. Cars.com Inc.*,
2025 WL 487194 (Cal. Super. Jan. 27, 2025)....................10, 11

*Scharon v. Paramount Global*,
2025 WL 2996812 (Cal. Super. Oct. 03, 2025)....................12

*Seymour v. The Mut. of New York Life Ins. Co.*,
2021 WL 4497502 (C.D. Cal. Mar. 1, 2021)....................13

*Shulman v. Grp. W Prods., Inc.*,
18 Cal. 4th 200 (1998)....................7

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................4, 5

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024), *aff'd sub nom. Thomas v. Papa John's Int'l, Inc.*, 2025 WL 1704437 (9th Cir. June 18, 2025) .......... 8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 1, 4

**Constitutional Provisions**

U.S. Const. art. III .......... 4

**Statutes**

28 U.S.C. § 1332 .......... 13

Cal. Pen. Code § 638.50 .......... *passim*

Cal. Pen. Code § 638.51 .......... *passim*

Cal. Pen. Code § 638.52 .......... 10, 12

Cal. Pen. Code § 638.53 .......... 12

**Rules**

Fed. Rule Civ. Proc. 8 .......... 12

Fed. Rule Civ. Proc. 12 .......... 3

Fed. Rule Civ. Proc. 23 .......... 3

Local Rule 11-6.1 .......... 16

**Other Authorities**

S.B. 690, 2025-2026 Reg. Sess. (Cal. 2025) .......... 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This Complaint is yet another "one in a rash of similar actions brought by Plaintiff's counsel, Tauler Smith LLP, alleging violations of Cal. Penal Code § 638.51." *See Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, at *2 & n.1 (N.D. Cal. Aug. 6, 2025) (identifying 18 other cases filed by Plaintiff's counsel, Tauler Smith LLP, in California federal courts in 2025); *see also Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *2 & n.1 (N.D. Cal. June 24, 2025) (observing that "[i]n this year alone, counsel for Plaintiff, Tauler Smith LLP, has filed at least fifteen substantively identical cases in a California federal district court").

Underneath the sensationalized allegations about commercial and governmental surveillance that have no alleged connection with either Plaintiff Lawrence Schallert or Defendant StockX LLC ("StockX"), *see, e.g.*, Compl. ¶¶ 22, 34–37, this Complaint is built on the same defective skeleton as those categorically dismissed by federal courts in California: "defendants are website operators that use [some alleged] tracking software as part of their website's code and plaintiffs are unwitting website visitors. As alleged, the [tracking] software illegally gathers personal information about site users without permission, rendering the software an unpermitted 'trap and trace device' under the California Invasion of Privacy Act (CIPA)." *Mitchener*, 2025 WL 2272413, at *2.

As portended by the dismissal of those other complaints filed by Plaintiff's counsel, this Complaint should be dismissed based on the deficiencies it presents on its face. ***First***, Plaintiff fails to allege a particularized or concrete injury supported by "a close historical or common-law analogue" to establish standing to sue under Article III. *Popa v. Microsoft Corp.*, 153 F.4th 784, 788, 794 (9th Cir. 2025) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021)). ***Second***, Plaintiff fails to state a claim against StockX under California Penal Code § 638.51, because the alleged tracking software does not constitute a "trap and trace device" as defined by

§ 638.50(c). *See Mitchener*, 2025 WL 2272413, at *5; *Kishnani*, 2025 WL 1745726, at *4. ***Third***, Plaintiff fails to invoke this Court's diversity jurisdiction by omitting to plead StockX's principal place of business. *See Blaker v. Am. Bicycle Grp., LLC*, 2024 WL 5411370, at *1 (C.D. Cal. Nov. 5, 2024).

In the alternative, the Court should strike Plaintiff's class allegations, which attempt to define an impermissible fail-safe class that "precludes membership unless the liability of the defendant is established." *See Moghadam v. Alleviate Tax*, 2025 WL 3190133, at *4 (C.D. Cal. Feb. 24, 2025) (internal quotation omitted).

Lastly, the inherent contradiction between what is necessary to allege a trap and trace claim and what is necessary to establish this Court's subject matter jurisdiction ensures that any attempt by Plaintiff to amend will be futile. Accordingly, the Court should dismiss the Complaint without leave to amend. *See Mitchener*, 2025 WL 2272413, at *5; *Kishnani*, 2025 WL 1745726, at *5.

## II. BACKGROUND

The following summary is based on the Complaint and assumed to be true for the purposes of this Motion only.

Plaintiff alleges that he is a California citizen who resides in the territory covered by this District. *See* Compl. ¶ 10. StockX is a "Michigan limited liability company" that operates the website https://stockx.com (the "Website"). *Id.* ¶ 11. Plaintiff does not identify StockX's principal place of business.

Plaintiff alleges that StockX collaborates with a French Company called Criteo to install a Software Development Kit ("SDK") on the Website. *See id.* ¶¶ 23, 37, 43. In general, Criteo's SDK allegedly collects "cookie IDs," "IP address," "device ad IDs," "user agent," and "browsing events . . . including products viewed, timestamps (of events), purchases, page URLs[,] and referrer URLs" from website visitors. *See id.* ¶¶ 28–29. Plaintiff alleges that StockX collects "browsing habits (the webpages they visit) and locations; things such as device and browser identity, specifications and settings; and cookieIDs found on the device" through "code belonging to social

media companies" and "data broker software." *Id.* ¶ 2. Plaintiff does not specify what data the Website collects through Criteo SDK.

Plaintiff alleges that he visited the Website once, on September 30, 2025, during which certain "identifying information" of him was allegedly sent to Criteo. *See id.* ¶ 31. Plaintiff provides no detail as to what identifying information was collected but believes such information was transmitted from StockX to Criteo, and that Criteo maintains a profile of him. *See id.* ¶¶ 32–33.

Plaintiff claims that StockX violated California Penal Code § 638.51, known as the California Trap and Trace Law, because the Criteo SDK constitutes a "trap and trace device" as defined by § 638.50(c). *See id.* ¶¶ 39, 42–47. Plaintiff seeks statutory damages, attorneys' fees, and injunctive relief. *See id.* at 12. Plaintiff also proposes to represent a class of "[a]ll persons within California whose identifying information was sent to Criteo as a result of visiting the Website within the limitations period." *See id.* ¶ 49.

## III. LEGAL STANDARDS

**Rule 12(b)(1):** A defendant may challenge the Court's subject matter jurisdiction on the face of a complaint by arguing that "the allegations contained in [the] complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "It is the plaintiff who bears the burden of demonstrating that the [c]ourt has subject matter jurisdiction to hear the action." *See Gastelum v. TJX Companies, Inc.*, 2024 WL 1601256, at *1 (C.D. Cal. Mar. 28, 2024).

**Rule 12(b)(6):** A Rule 12(b)(6) motion "tests the legal sufficiency of the claims asserted in the complaint" and should be granted if "there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Id.* at *2 (internal quotation omitted).

**Motion to Strike Class Allegations:** Rule of Civil Procedure 23(c)(1) requires courts to "determine by order whether to certify the action as a class action" at "an

early practicable time after a person sues or is sued as a class representative." Pursuant to this rule, even before a motion for class certification, "[a] court may strike class allegations before a motion for class certification if the matter is sufficiently obvious from the pleadings." *Kramer v. Wilson Sporting Goods Co.*, 2013 WL 12133670, at *4 (C.D. Cal. Dec. 13, 2013) (internal quotation omitted).

## IV. ARGUMENT

### A. The Court Should Dismiss the Complaint for Plaintiff's Failure to Plead Article III Standing.

The standing requirement, grounded in Article III of the Constitution, ensures that only litigants with a "personal stake" in a case or controversy can "maintain a lawsuit in federal court to seek redress for a legal wrong." *Popa*, 153 F.4th at 788 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) and *TransUnion*, 594 U.S. at 423).

Core to this standing requirement is that a plaintiff must articulate how he has suffered a "particularized" injury, meaning an injury that "affect[s] the plaintiff in a personal and individual way." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 n.1 (1992). In addition, to establish Article III standing, a plaintiff's injury must be "concrete," that is, one that "actually exist[s]" and is "real, and not abstract." *Popa*, 153 F.4th at 788 (internal quotation omitted). For intangible harm, like privacy harm, a court must look to history for guidance and "assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." *Id.* at 788, 791.

Plaintiff, here, fails to allege either a particularized or a concrete injury within the meaning of Article III.

#### 1. Plaintiff fails to allege a "particularized" injury.

At the pleading stage, a plaintiff is required to "clearly … allege facts demonstrating" that he has suffered a "particularized injury … that affects [him] in a 'personal and individual way.'" *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 705 (9th

Cir. 2020) (citing *Spokeo*, 578 U.S. at 331) (affirming dismissal of complaint for lack of Article III standing).

Plaintiff has alleged virtually nothing to meet this particularity requirement. Although the Complaint alleges what information the Criteo SDK and the Website collect in general, *see* Compl. ¶¶ 2, 27–28, with respect to Plaintiff, it only says that his "identifying information was sent to Criteo," and nothing more. *Id.* ¶ 31. The Complaint says nothing about what type of personal information belonging to Plaintiff was supposedly sent to Criteo, or how that transmission could have violated a protectable privacy interest. Because "[t]his conclusory allegation does not identify what personal information of Plaintiff's, if any, was captured by" the Criteo SDK, "Plaintiff has not sufficiently alleged the collection or disclosure of any of h[is] personal information that would violate a protectable privacy interest." *Mitchener v. Talkspace Network LLC*, 2025 WL 1822801, at *8 (C.D. Cal. June 27, 2025) (granting motion to dismiss based on lack of standing); *accord Heiting v. FKA Distrib. Co.*, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025) (holding "[p]laintiff's bare allegation that she visited Defendant's website is insufficient to establish injury in fact" because she "fails to allege any basic facts" like "what information she provided" to defendant's website); *cf. Hernandez-Silva v. Instructure, Inc.*, 2025 WL 2233210, at *2 (C.D. Cal. Aug. 4, 2025) (noting that plaintiffs' "fail[ure] to identify what information—or even what categories of information—was collected from any plaintiff … undermine [their] ability to plausibly allege any claim for relief").

For this reason alone, the Court should dismiss the Complaint. *Cf. Gastelum*, 2024 WL 1601256, at *3 (dismissing complaint because "[p]laintiff identifies barriers that relate to wheelchair users … without alleging that he used his wheelchair in the stores") (Walter, J.).

**2. <u>Plaintiff fails to allege a "concrete" injury.</u>**

Even assuming everything the Complaint alleges about the Website and Criteo applies to Plaintiff personally, the Complaint must still be dismissed for lack of a

concrete injury.

*Popa*, also a privacy class action involving alleged tracking software embedded on a website, illustrates this problem. There, the Ninth Circuit explained that in assessing the concreteness of an injury-in-fact, "history" is "the touchstone." 153 F.4th at 789. That requires district courts to "assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* (citation omitted). In other words, the relevant "inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.*

As the Ninth Circuit in *Popa* explained, there are four traditional privacy torts recognized at common law that may, at least in theory, fit the contours of a modern-day privacy action. They are "intrusion upon seclusion, appropriation of another person's name or likeness, publicity given to another person's private life, and publicity that places one in a false light." *Id.* at 792. (citation omitted). But, in order to survive a motion to dismiss, a website visitor bringing a class action against a website operator for collecting data on visitors' interactions with the website must, as a matter of pleading, explain how the website's tracking of such interactions would be actionable as one of these four privacy torts. *See id.* at 791. Plaintiff, here, has failed to do so.

As an initial matter, misappropriation of name or likeness and publicity in false light bear no relevance to Plaintiff's allegations, as the former requires alleging both "the appropriation of plaintiff's name or likeness to defendant's advantage" and "the defendant's use of the plaintiff's identity," *Maxwell v. Dolezal*, 231 Cal. App. 4th 93, 97 (2014) (internal quotation omitted), while the latter protects against "[p]ublicity which places the plaintiff in a false light in the public eye," *Lugosi v. Universal Pictures*, 25 Cal. 3d 813, 819 (1979). Plaintiff does not allege any facts that would suggest that StockX has misappropriated his identity or generated any publicity that places him in a false light.

The other two privacy torts—intrusion upon seclusion and public disclosure of private facts—also are not borne out by Plaintiff's allegations, because both torts require alleging an objectively reasonable expectation of privacy and highly offensive conduct. *See Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 232, 236 (1998) (noting that intrusion upon seclusion "is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source" and has as an element the "offensiveness of the intrusion"); *Moreno v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125, 1129–30 (2009) (finding no disclosure of private facts because "no reasonable person would have had an expectation of privacy regarding the published material" and noting that the tort requires as an element that the disclosure "would be offensive and objectionable to the reasonable person"). Plaintiff fails to allege any objectively reasonable expectation of privacy or highly offensive conduct. "A reasonable expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 37 (1994). To allege a reasonable expectation traditionally protected by privacy torts, a plaintiff must identify "sensitive information" captured by the defendant. *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023); *accord Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 926–27 (C.D. Cal. 2025) (finding no concrete injury-in-fact where complaint failed to describe "sufficiently personal or sensitive" information).

Here, the information Plaintiff alleges Criteo may collect—IP address, device information, and browsing activity on the StockX's merchant Website, *see* Compl. ¶¶ 2, 6, 27–28—bears no resemblance to the kind of information that courts have held to be sensitive, such as "sensitive health and personal safety information," "race and politics," *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023), or "Facebook[] user profiles . . . reveal[ing] an individual's likes, dislikes, interests, and habits over a significant amount of time," *In re Facebook, Inc. Internet Tracking*

*Litig.*, 956 F.3d 589, 599 (9th Cir. 2020).

To the contrary, the generic, impersonal information allegedly transmitted to Criteo falls squarely within the categories over which "a number of courts have found that consumers do not have a reasonable expectation of privacy." *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024), *aff'd sub nom. Thomas v. Papa John's Int'l, Inc.*, 2025 WL 1704437 (9th Cir. June 18, 2025). As courts emphasize, the context of the alleged information collection matters, as "accepted community norms around conversations in … a commercial website for selling merchandise[] point away from a reasonable expectation of privacy." *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *11 (S.D. Cal. Oct. 24, 2023); *accord Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 524 (C.D. Cal. 2021) (holding plaintiff cannot "allege he had a reasonable expectation of privacy over his activity on Nike's Website."); *Farst v. AutoZone, Inc.*, 700 F. Supp. 3d 222, 230 (M.D. Pa. 2023) ("[S]hopping on a public website, like shopping in a public store, is not an activity one can reasonably expect to keep private from the retailer."). The type of information involved matters too. "[U]ser and device identifiers" are not "the type of information that could give rise to a privacy injury." *Ji v. Naver Corp.*, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022). Nor are "URLs of web pages visited, product preferences, interactions on a website, … and website browsing activities." *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023).

In addition, *Popa* forecloses any attempt by Plaintiff to allege offensive conduct. As in *Popa*, Plaintiff here "identifies no embarrassing, invasive, or otherwise private information collected by" Criteo. *See* 153 F.4th at 791. And, indeed, any alleged tracking of Plaintiff's browsing activity on the Website "seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id.* This kind of data collection is not "remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id.*

Plaintiff has failed to allege any particularized injury and likewise has failed to allege any concrete injury, sufficient to invoke this Court's subject matter jurisdiction. For either reason, the Court should dismiss the Complaint for failure to plead Article III standing.

### B. <u>The Court Should Dismiss the Complaint for Failure to State a Claim.</u>

In any event, the Court should dismiss the Complaint for state a claim. California Penal Code § 638.51(a) prohibits "install[ing] or us[ing] … trap and trace device without first obtaining a court order." Section 638.50, in turn, defines a trap and trace as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication."

Key to the definition is that a trap and trace device "capture[s] information *about the communication*, but *not the content of the communication* itself." *Mitchener*, 2025 WL 2272413, at *5 (internal quotation omitted). Plaintiff provides scant detail about his interaction with the Website, including any detail to suggest that the Criteo SDK functioned as a trap and trace device in that interaction. Indeed, all Plaintiff says is that his "identifying information was sent to Criteo" when he visited the Website. Compl. ¶ 31. That single conclusory statement alone "cannot allege that the 'dialing, routing, addressing, or signaling information' relating to any" communication between Plaintiff and the Website "was unlawfully tracked," in violation of § 638.51. *D'Antonio v. Smith & Wesson Inc.*, 2026 WL 446310, at *5 (N.D. Cal. Feb. 17, 2026).

Even considering the types of information the Criteo SDK allegedly collects in general, at least some of the categories are the content of a visitor's communication with the Website, such as "products viewed" and "purchases." Compl. ¶ 28. Given so, the Court should dismiss the Complaint for failure to state a claim. *See Mitchener*,

2025 WL 2272413, at *5 ("Any fingerprint that reveals biographical information is the content of any communication between visitor and Website, and thus, the claim and the case cannot survive."); *accord Kishnani*, 2025 WL 1745726, at *4.

Even if the language of § 638.50 leaves room for ambiguity, the Court should still dismiss Plaintiff's claim because sound reasons counsel against applying the California Trap and Trace Law to the Internet. In recent years, as the largely pre-Internet California Invasion of Privacy Act ("CIPA"), of which §§ 638.50 and 638.51 are a part, has been increasingly weaponized in privacy class actions, more and more courts have been questioning the wisdom of reading CIPA literally, detached from its statutory context, to enable such abusive litigation.

CIPA "was enacted in 1967 to criminalize wiretapping and eavesdropping on confidential communications." *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1111 (N.D. Cal. 2025). In 2015, when the California legislature introduced § 638.51(a), it intended to "create a comprehensive framework governing how California law enforcement officials could obtain and use" trap and trace devices. *Sanchez v. Cars.com Inc.*, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025). Statutory context reveals that the legislature clearly understood such devices operate on "telephone line[s]." *See* Cal. Pen. Code § 638.52(b)(1) (requiring magistrate's order authorizing the use of a pen register or trace and track device specify "[t]he identity, if known, of the person to whom is leased or in whose name is listed the telephone line to which the pen register or trap and trace device is to be attached"). And as its placement in the California Penal Code indicates, § 638.51(c) imposes criminal liability on offenders, including fine and imprisonment.

As one federal court recently recognized, the concomitant criminal consequences and the ill-fit between the CIPA's language and Internet communications counsel against applying the CIPA to the Internet, especially given that California has more recently "adopted other statutes that more clearly speak to the practice of data sharing." *Doe*, 806 F. Supp. 3d at 1119. Furthermore, the

California legislature is in the process of passing a bipartisan bill that will spell out under § 638.50(c) that "[a] trap and trace device does not include a device or process that is used in a manner consistent with a commercial business purpose." S.B. 690, 2025–2026 Reg. Sess. (Cal. 2025).

Along these lines, California state courts have held their state law should not be read to capture tracking pixels as track and trace devices. In *Sanchez*, for example, the court reached the following conclusion after a comprehensive review of § 638.51's legislative history:

> Generally, CIPA criminalizes wiretapping, eavesdropping, interception or recording of telephone communications without authorization from a court. (Cal. Pen. Code, §§ 630, et seq.) Here, the legislative history of the CIPA suggests that "pen register" and "track and trace devices" refers to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, not internet communications such as websites. Penal Code section 638.51 and its legislative history suggest that section 638.51 applies only to telephone-tracking technology, not IP address-collecting software used by a website to improve its user functionality and the effectiveness of its marketing. The California legislature enacted Assembly Bill 929, the genesis of CIPA section 638.51, in 2015 to create a comprehensive framework governing how California law enforcement officials could obtain and use a pen register or trap and trace device, just like its federal counterpart. In enacting Assembly Bill 929, the California Legislature adopted the same authorization provision in CIPA section 638.52 that courts have relied on under the federal Pen Register Act to find that the Act applied only to mechanical, telephone number-tracing technology, not technology used to collect the IP address from a desktop computer. Thus, the legislative history of the CIPA suggests that "pen register" and "track and trace devices" refer to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, and not internet communications such as websites.

2025 WL 487194, at *3; *accord Palacios v. Fandom, Inc.*, 2024 WL 5494527, at *3 (Cal. Super. Sep. 24, 2024) (same).

Statutory context also matters. *See John v. Superior Ct.*, 63 Cal. 4th 91, 96 (2016) ("We construe the statute's words in context, and harmonize statutory provisions to avoid absurd results"); *Alturas Indian Rancheria v. Newsom*, 2023 WL 3025225, at *2 (E.D. Cal. Apr. 20, 2023) ("When California courts interpret statutes, they usually begin by considering the ordinary and usual meaning of the law's terms,

viewing them in their context within the statute.") (internal quotation omitted). As another California court has explained in detail, § 638.51's context clarifies that the provision is not meant to apply to Internet communications:

> Section 638.51 references sections 638.52 and 638.53, which set forth the requirements for a peace officer to install or use a pen register or trap and trace device. Notably, an order permitting use or installation of either must include the identity "of the person to whom is leased or in whose name is listed the telephone line to which the pen register or trap and trace device is to be attached" and the number and (if known) physical location of the telephone line. Pen. Code § 638.52(d). This strongly suggests that section 638.51 applies to telephone lines, not websites, because websites do not have lines, physical locations, or numbers.

*Scharon v. Paramount Global*, 2025 WL 2996812, at *1 (Cal. Super. Oct. 03, 2025). Another California court has spoken to the policy reasons against a literal reading of § 638.50:

> The court also finds public policy strongly disputes Plaintiff's potential interpretation of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting the website, as a violator. Such a broad based interpretation would potentially disrupt a large swath of internet commerce without further refinement as the precise basis of liability, which the court declines to consider.

*Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024).

The California legislature has provided its clear guidance that tracking codes on websites should not be construed as unauthorized trap and trace devices and so have California courts. As a result, this Court "should not contort [it]sel[f] to fit the type of conduct alleged in this case into" a statute that is not meant to govern it. *Doe*, 806 F. Supp. 3d at 1119.

### C. <u>The Court Should Dismiss the Complaint for Failure to Plead Diversity Jurisdiction.</u>

The Complaint suffers from an additional jurisdictional defect because Plaintiff fails to invoke this Court's diversity jurisdiction.

Plaintiff here fails Federal Rule of Civil Procedure 8(a)(1)'s requirement that a complaint contain "a short and plain statement of the grounds for the court's

jurisdiction." Plaintiff brings only a state law claim against StockX and purports to invoke the Court's diversity jurisdiction provided by the Class Action Fairness Act ("CAFA"), which requires Plaintiff to "demonstrate, at a minimum, that at least one plaintiff and one defendant are citizens of different states." *Blaker v. Am. Bicycle Grp., LLC*, 2024 WL 5411370, at *1 (C.D. Cal. Nov. 5, 2024) (citing 28 U.S.C. § 1332(d)(2)). Plaintiff claims to be a citizen of California and, for StockX, only alleges it is "a Michigan limited liability company." Compl. ¶¶ 6, 10, 11.

Plaintiff's allegation about StockX does not supply a basis for the Court's diversity jurisdiction, because "[f]or purposes of establishing diversity jurisdiction under CAFA, a limited liability company is a citizen of the state where it has its principal place of business *and* the state under whose laws it is organized." *Blaker*, 2024 WL 5411370, at *1 (emphasis added). Plaintiff's allegation at most suggests StockX is incorporated in Michigan. The Complaint is, however, silent on where StockX has its principal place of business. "Because the Complaint does not allege the location of Defendant's principal place of business, Plaintiff has failed to adequately allege Defendant's citizenship." *Id.*; *accord Seymour v. The Mut. of New York Life Ins. Co.*, 2021 WL 4497502, at *1 (C.D. Cal. Mar. 1, 2021); *Graf v. Hillstone Rest. Grp., Inc.*, 2023 WL 3564737, at *1 (C.D. Cal. Apr. 7, 2023). Given so, the Court should dismiss the Complaint for lack of diversity jurisdiction.

**D. <u>The Court Should Strike Plaintiff's Class Allegations.</u>**

In the alternative, the Court should strike Plaintiff's class allegations as they purport to define an impermissible fail-safe class. A fail-safe class "is pleaded on an individualized merits-based inquiry and not objective criteria." *Moghadam*, 2025 WL 3190133, at *4. A fail-safe class is "defined in a way that precludes membership unless the liability of the defendant is established." *Id.* (citing *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010)). "When the class is so defined, once it is determined that a person, who is a possible class member, cannot prevail against the defendant, that member drops out of the class. That is palpably unfair to the

defendant, and is also unmanageable—for example, to whom should the class notice be sent?" *Id.*

Plaintiff's purported class definition impermissibly overlaps with the merits of his claim. For instance, Plaintiff's § 638.51 claim is based on the allegation that "[w]hen Plaintiff" visited the Website, his "identifying information was set to Criteo." Compl. ¶ 31. In the same vein, the purported class includes anyone residing in California "whose identifying information was sent to Criteo as result of visiting the Website." *Id.* ¶ 49. Further tracking the merits, the purported definition also excludes any person who visited the Website before the limitations period. *See id.*

In light of these defects, the Court should strike Plaintiff's improper class allegations. *See Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008) (striking class allegations where proposed class included persons who purchased defendant's products that were "falsely advertised," since determining who should be a member of this class would require the court to first "reach a legal determination that [defendant] had" in fact "falsely advertised"); *see also Dodd-Owens v. Kyphon, Inc.*, 2007 WL 420191, at *3 (N.D. Cal. Feb. 5, 2007) (striking class allegation that attempted to define class to include those "who have experienced gender discrimination at any time during the applicable liability period").

**E. <u>The Court Should Dismiss the Complaint with Prejudice.</u>**

"[A] district court need not grant leave to amend where the amendment … is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). The inherent incongruence between Plaintiff's trap and trace claim and the Constitution's requirement for a concrete injury reveals the "futility of Plaintiff's suit (and the myriad identical cases Plaintiff's counsel has filed in both federal and state courts)." *Mitchener*, 2025 WL 2272413, at *5. Again, under § 638.50, a trap and trace device "capture[s] information about the communication, but not the content of the communication itself." *Id.* (internal quotation and emphasis omitted). If Criteo only collects information *about* Plaintiff's communication with the Website, Plaintiff

cannot plead a protectable privacy interest in that type of data. If Criteo instead collects the content *of* Plaintiff's communication with the Website, then the Criteo SDK cannot be a trap and trace device per § 638.50.

Because any amendment "cannot cure Plaintiff's lack of standing to bring suit," the Court should dismiss the Complaint without leave to amend. *Id.* at *6 (granting motion to dismiss complaint without leave to amend); *accord Kishnani*, 2025 WL 1745726, at *5 (granting motion to dismiss without leave to amend where "any amendment to the FAC cannot cure Plaintiff's lack of standing to bring suit").

## V. CONCLUSION

For the reasons stated above, the Court should dismiss the Complaint in its entirety with prejudice and/or strike Plaintiff's class allegations.

DATED: March 30, 2026

KENDALL BRILL & KELLY LLP

By: /s/ Jeff Chemerinsky
Jeff Chemerinsky
Attorneys for Defendant StockX LLC

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for StockX LLC, certifies that this brief contains 4,971 words, which complies with the word limit of Local Rule 11-6.1.

DATED: March 30, 2026

KENDALL BRILL & KELLY LLP

By: /s/ Jeff Chemerinsky
Jeff Chemerinsky
Attorneys for Defendant StockX LLC